IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| THIRD DEGREE FILMS, INC. | : | |
| | : | |
| v. | : | Civil Action No. DKC 11-3007 |
| | : | |
| DOES 1-108 | : | |

                         **MEMORANDUM OPINION**

   Plaintiff Third Degree Films, Inc., filed this action for copyright infringement against 108 John Doe defendants. Presently pending and ready for review are three motions to quash or sever filed by Does 46, 53, and 105. (ECF Nos. 12, 14, 16). The issues have been briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motions will be denied.

**I.   Background**

   Plaintiff is a California-based corporation that owns the copyright to a movie titled *Illegal Ass 2* ("the Work"). The Doe Defendants are alleged to have illegally downloaded and/or uploaded the Work using an internet protocol called BitTorrent. The Doe Defendants are identified in the complaint only by their internet protocol ("IP") addresses. By using geo-location technology, which apparently allows a user to correlate an IP address to a physical location, Plaintiff has attempted to limit

the Doe Defendants in this case to persons residing within this district.

The complaint, unless otherwise noted, describes BitTorrent as follows: BitTorrent facilitates the sharing of large amounts of data across "Peer-to-Peer" networks on the internet. To begin, an initial user decides to share a file (known as a "seed") with a torrent network.[1] Other users (known as "peers") within the network then connect to the seed file for downloading. Each peer downloads one piece of the seed file at a time. As a piece of the seed file is downloaded, it is typically made available to other peers to download. In other words, every downloader is also an uploader. Thus, as the process continues, peers may receive pieces of the seed file from those who have already downloaded that piece and not necessarily from the initial seeder. This system of multiple pieces of data coming from various peers is called a "swarm."[2] With respect to any particular swarm, an alphanumeric representation (known as a "hash") of the shared file remains the same. (ECF No. 1-5 ¶ 6). A hash is essentially a "forensic

---

[1] To join and interact with a BitTorrent network, a user must install a "client" (i.e., a software application) onto his or her computer. (ECF No. 1-5, Nicolini Decl., ¶ 5).

[2] A swarm may endure for over a year depending on the popularity of the file being shared. (ECF No. 1-5 ¶ 6).

digital fingerprint" that identifies a particular copy of a shared file. (ECF No. 1 ¶ 8).

Plaintiff alleges that the Doe Defendants "have not only swapped the same copyrighted work, they have swapped the exact same file." (*Id.*). Moreover, "[a]ll alleged infringers downloaded the same copyrighted work while trading in the same torrent." (*Id.*). To support this allegation, Plaintiff retained a firm called Copyright Enforcement Group, LLC, ("CEG") to identify the IP addresses of users who shared a copy of the Work with a particular hash via BitTorrent as well as the time and date of the alleged infringement. This information is publicly available. The actual names, addresses, telephone numbers, and email addresses associated with those IP addresses, however, is not.

On October 20, 2011, Plaintiff filed a complaint against the Doe Defendants alleging one count of copyright infringement. (ECF No. 1). On October 28, 2011, the court issued an order allowing Plaintiff to serve subpoenas on the internet service providers ("ISPs") listed in Exhibit A of the complaint to obtain the "names, current (and permanent) addresses, telephone numbers, e-mail addresses, and Media Access Control addresses" of the Doe Defendants. (ECF No. 6). Several Doe Defendants have since filed motions to quash the subpoenas or to sever. The motions of Does 46, 53, and 105, all of whom are represented

3

by counsel, are now ripe for review. (ECF Nos. 12, 14, 16). Plaintiff has opposed each motion. (ECF Nos. 13, 18, 19). None of the three Does filed a reply.

**II. Analysis**

Several of the arguments the Doe Defendants advance overlap, as do Plaintiff's rebuttals to each motion. Each argument will be addressed in turn.

   **A.   Standing to Quash the Subpoenas**

As to all three Doe Defendants, Plaintiff asserts that the Does lack standing to quash the subpoenas. Indeed, "[a] party does not have standing to challenge a subpoena issued to a non-party unless the party claims some personal right or privilege in the information sought by the subpoena." *Robertson v. Cartinhour*, No. AW-09-3436, 2010 WL 716221, at *1 (D.Md. Feb. 23, 2010) (internal quotations omitted); *see also In re Grand Jury Subpoena: John Doe, No. 05GJ1318*, 584 F.3d 175, 184 n.14 (4th Cir. 2009) (citing 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2459 (3d ed. 2011)) (holding the same in a grand jury proceeding).

Courts have taken different approaches when dealing with the issue of standing in the context of alleged copyright infringement over the internet, and thus the jurisprudence in this area is somewhat confusing. One court has explicitly held that a defendant has standing to contest third-party subpoenas

like the ones here "to assert his privacy interest," but that court ultimately concluded that the Doe defendant there failed to demonstrate why the requested information was privileged. *See Third Degree Films, Inc. v. Does 1-2010*, Civil No. 4:11 MC 2, 2011 WL 4759283, at *2 (N.D.Ind. Oct. 6, 2011). That court also explicitly held that a Doe defendant *lacks* standing to move to quash these sorts of subpoenas on the basis of undue burden. *See id.* At least one court has concluded that defendants lack standing to challenge this type of subpoena on procedural grounds because there are no demonstrated privacy interests or personal rights attached to the requested information. *See Liberty Media Holdings, LLC, v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05*, --- F.Supp.2d ---, 2011 WL 5161453, at *4 (D.Mass. Oct. 31, 2011); *see also W. Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 16 (D.D.C. 2011) (discussing generally a Doe defendant's lack of privacy interests in this context, but specifically holding only that he does not have standing to quash a subpoena based on procedural defects). And other courts have bypassed the issue of standing altogether and discussed all proffered bases for quashing a subpoena, while reaching interim conclusions that would seem to suggest standing is absent. *See, e.g.*, *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D.Ill. 2011) ("Internet subscribers do not have a reasonable expectation of privacy in

5

their subscriber information — including name, address, phone number, and email address — as they have already conveyed such information to their ISPs.").

Doe 53 advances two potential bases for finding standing on behalf of the Doe Defendants.  First, Doe 53 argues that he or she has a "right to privacy."  (ECF No. 12, at 3).  As already alluded to, however, in this context, whatever privacy interest that a customer may have in the contact information associated with an IP address is minimal at best.  *See Liberty Media Holdings, LLC,* 2011 WL 5161453, at *4 n.3; *Third Degree Films, Inc.*, 2011 WL 4759283, at *3-4; *First Time Videos, LLC*, 276 F.R.D. at 247; *W. Coast Prods., Inc.*, 275 F.R.D. at 13.  Second, Doe 53 argues that he or she engaged in "protected anonymous free speech."  (ECF No. 12, at 3).  Where the free speech at issue is alleged copyright infringement, however, "courts have routinely held that a defendant's First Amendment privacy interests are exceedingly small."  *W. Coast Prods., Inc.*, 275 F.R.D. at 14 (internal quotations omitted); *see also Third Degree Films, Inc.*, 2011 WL 4759283, at *4; *First Time Videos, LLC*, 276 F.R.D. at 248.  Still, however minimal or "exceedingly small" the Doe Defendants' interests here are, parties need only have "*some* personal right or privilege in the information sought" to have standing to challenge a subpoena to a third party.  *Robertson*, 2010 WL 716221, at *1 (emphasis added).

Accordingly, it appears that the Doe Defendants have standing to contest the subpoenas, and their motions to quash will not be denied on that basis.

### B. Motion to Quash Based on Undue Burden and Denial of Liability

None of the other arguments the Doe Defendants advance compel granting the motions to quash.

First, Doe 53 contends that permitting the subpoenas would subject Doe 53 to an undue burden pursuant to Rule 45(c)(3)(A)(iv). (ECF No. 12, at 1). As Judge Williams recently noted in a virtually identical case with the same Plaintiff, however:

> [T]he Court permitted Plaintiff to serve subpoenas on ISPs so that Plaintiff may identify the Doe Defendants responsible for the alleged infringement. Such identification is necessary so that Plaintiff may pursue these actions and enforce its legal rights to distribute its pornographic motion picture by obtaining a remedy against infringers. [The] argument that the subpoena presents an undue burden is unavailing because the subpoena is directed toward the ISPs and not the Doe Defendants and accordingly does not require [the Doe Defendants] to produce any information or otherwise respond.

*Third Degree Films, Inc. v. Does 1-118*, No. 11-cv-03006-AW, 2011 WL 6837774, at *3 (D.Md. Dec. 28, 2011); *see also Liberty Media Holdings, LLC,* 2011 WL 5161453, at *5 ("Rule 45 protects those persons *subject to a subpoena* from any resulting undue burden or

7

expense, Fed.R.Civ.P. 45(c)(3)(A)(iv), and imposes sanctions on serving parties who fail to take the reasonable steps to avoid such a burden, Fed.R.Civ.P. 45(c)(1)."). Thus, the motions to quash will be denied on this ground.

Second, all three Does contend that they could not have committed the copyright infringement for various reasons. No matter what reason is given for why a Doe Defendant could not have been the infringer, however, "[i]t is well-settled that such general denials of liability cannot serve as a basis for quashing a subpoena." *First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 256 (N.D.Ill. 2011) (collecting cases). As one court explained:

> It may be true that the putative defendants who filed motions and letters denying that they engaged in the alleged conduct did not illegally infringe the plaintiff's copyrighted movie, and the plaintiff may, based on its evaluation of their assertions, decide not to name these individuals as parties in this lawsuit. On the other hand, the plaintiff may decide to name them as defendants in order to have an opportunity to contest the merits and veracity of their defenses in this case. In other words, if these putative defendants are named as defendants in this case, they may deny allegations that they used BitTorrent to download and distribute illegally the plaintiff's movie, present evidence to corroborate that defense, and move to dismiss the claims against them. A general denial of liability, however, is not a basis for quashing the plaintiff's subpoenas and preventing the plaintiff from obtaining the putative defendants' identifying

8

<-----/>
<-----/>

> information. That would deny the plaintiff access to the information critical to bringing these individuals properly into the lawsuit to address the merits of both the plaintiff's claim and their defenses.

*Voltage Pictures, LLC v. Does 1-5,000*, --- F.Supp.2d ---, 2011 WL 1807438, at *2 (D.D.C. May 12, 2011). Consequently, the motions to quash will be denied on this ground as well.

### C. Joinder and Severance

Rule 20 permits a plaintiff to join parties in a single action if (1) a right to relief is asserted against the defendants with respect to the same transaction, occurrence, or series of transactions or occurrences; and (2) a common question of law or fact will arise in the action. Fed.R.Civ.P. 20(a)(2); *see also Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001). "Application of [the 'transaction or occurrence'] test has generally proceeded on a case by case basis." *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983). This test "would permit all reasonably related claims . . . to be tried in a single proceeding." *Id.* (internal quotations omitted). Moreover, Rule 20 grants courts "wide discretion concerning the permissive joinder of parties." *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007). The permissive joinder rule is to be construed in view of its purposes "to promote trial convenience and expedite the final determination of disputes." *Id.* (internal quotations

omitted). If the addition of parties would not promote these objectives - or if it would result in "prejudice, expense, or delay" - the court may deny joinder. *Id.* The purpose of Rule 20(a) is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

As a preliminary matter, even if the Doe Defendants were improperly joined, the remedy is not dismissal of the action as Doe 46 contends. (*See* ECF No. 14-1, at 7). The plain language of Rule 21 states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed.R.Civ.P. 21. Thus, to the extent Doe 46 seeks dismissal on this basis, Doe 46's motion will be denied.

Regarding the first requirement of Rule 20, the question of whether users who allegedly participated in the same BitTorrent swarm to share illegally a copyrighted work are part of the "same transaction, occurrence, or series of transactions or occurrences" is unsettled. Several courts — including one in this district — have held that such users are indeed so linked. *See, e.g.*, *Patrick Collins, Inc. v. Does 1-15*, No. 11-cv-02164-CMA-MJW, 2012 WL 415436, at *2-4 (D.Colo. Feb. 8, 2012); *Digital*

10

*Sin, Inc. v. Does 1-176*, No. 12-CV-00126 (AJN), 2012 WL 263491, at *5 (S.D.N.Y. Jan. 30, 2012); *Third Degree Films, Inc. v. Does 1-118*, No. 11-cv-03006-AW, 2011 WL 6837774, at *1-3 (D.Md. Dec. 28, 2011); *K-Beech, Inc. v. Does 1-57*, No. 2:11-cv-358-FtM-36SPC, 2011 WL 5597303, at *6 (M.D.Fla. Nov. 1, 2011), *report and recommendation adopted by* No. 2:11-CV-00358-FtM-36SPC, 2011 WL 5597293 (M.D.Fla. Nov. 17, 2011); *Liberty Media Holdings, LLC, v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05*, --- F.Supp.2d ---, 2011 WL 5161453, at *5 (D.Mass. Oct. 31, 2011); *Hard Drive Prods., Inc. v. Does 1-55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D.Ill. Oct. 12, 2011); *OpenMind Solutions, Inc. v. Does 1-39*, No. C 11-3311 MEJ, 2011 WL 4715200, at *6-8 (N.D.Cal. Oct. 7, 2011); *W. Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 15-16 (D.D.C. 2011); *Liberty Media Holdings, LLC v. Does 1-62*, No. 11cv 575 MMA (NLS), 2011 WL 1869923, at *5 (S.D.Cal. May 12, 2011).

Other courts have held to the contrary. *See, e.g.*, *Raw Films v. Does 1-32*, No. 1:11-CV-2939-TWT, 2011 WL 6840590, at *2 (N.D.Ga. Dec. 29, 2011); *SBO Pictures, Inc. v. Does 1-3,036*, No. 11-4220 SC, 2011 WL 6002620, at *2-4 (N.D.Cal. Nov. 30, 2011);[3]

---

[3] As the *SBO Pictures* court recognized, courts within the Northern District of California are split amongst themselves

*Liberty Media Holdings, LLC v. BitTorrent Swarm*, --- F.R.D. ---, 2011 WL 5190048, at *2-3 (S.D.Fla. Nov. 1, 2011); *Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11cv345, 2011 WL 4915551, at *2-4 (E.D.Va. Oct. 17, 2011).[4]

Here, Plaintiff thoroughly explains the unique architecture of the BitTorrent protocol and alleges that all of the Doe Defendants participated in the same swarm to share the Work. For example, Plaintiff describes how "each new peer receives a different piece of the data from each peer who has already downloaded the file" and that "[a]s a result, every downloader is also an uploader of the illegally transferred file." (ECF No. 1 ¶ 7). Additionally, Plaintiff notes that the Doe Defendants here "not only swapped the same copyrighted work,

---

with respect to this issue of "swarm"-based joinder. *Id.* at *3 (collecting cases).

[4] Other than *Boy Racer, Inc. v. Does 1-60*, No. C 11-01738 SI, 2011 WL 3652521 (N.D.Cal. Aug. 19, 2011), which is one of the cases holding that a "swarm"-based theory of joinder is untenable, the cases cited in Doe 46's motion are inapposite. Five of those eight cases had nothing to do with illegally sharing copyrighted works using peer-to-peer software. *See, e.g.*, *DIRECTV, Inc. v. Boggess*, 300 F.Supp.2d 444 (S.D.W.Va. 2004). The other three cases involved multiple plaintiffs alleging infringement of multiple works. *See, e.g.*, *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888 (E.D.Pa. Apr. 2, 2004). Significantly, none of these cases dealt with the BitTorrent protocol. The interactive nature of a swarm that lies at the heart of BitTorrent distinguishes it from other peer-to-peer software. Accordingly, the issue of permissive joinder in this context is better analyzed in relation to cases that specifically address BitTorrent file-sharing.

they swapped the exact same file." (*Id.* ¶ 8). Plaintiff further points out that the use of forensic software connecting IP addresses to the same exact "hash" has enabled it to sue only users who have taken part in the same series of transactions. (*Id.*). Based on these sorts of allegations, it is reasonable to conclude that each of the Doe Defendants may have facilitated directly the download of the Work by another of the Doe Defendants and was thus part of the "same transaction, occurrence, or series of transactions or occurrences." *See Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332, 343 (D.D.C. 2011) (finding joinder appropriate where "[e]ach putative defendant is a possible source for the plaintiffs' motion pictures, and may be responsible for distributing the motion pictures to the other putative defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material").

The second requirement of Rule 20 — whether a "common question of law or fact" exists among the Doe Defendants — is easily met. Here, Plaintiff has asserted the same count of copyright infringement against all Defendants. (ECF No. 1 ¶¶ 9-20). No exception is made as to any Doe Defendant. Thus, "[a]lthough Defendants will necessarily present different factual issues and legal defenses at a later stage in the litigation, the commonality of legal claims at this time

13

supports joinder." *Third Degree Films, Inc.*, 2011 WL 6837774, at *3.

Finally, the interests of judicial efficiency weigh in favor of joinder. Here, at this stage in the proceedings, there is little to be gained from severing the Doe Defendants, but there are certain efficiencies to be had by retaining them in the same suit. On October 28, 2011, Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (ECF No. 3) was granted (ECF No. 6), and Plaintiff has since served Rule 45 subpoenas on the ISPs involved to obtain the contact information for the Doe Defendants. Given the large number of Doe Defendants, responding to the subpoenas all at once is more manageable than severing the case into potentially over one hundred individual cases and requiring a concomitant number of separate subpoenas, all of which would seek the same type of information. Importantly, the Doe Defendants retain their ability to move for severance at a later stage of the litigation, and the court may always sever the case *sua sponte*. *See* Fed.R.Civ.P. 21.[5] The decision to deny the motions for

---

[5] For example, the court is well aware of the legitimate concerns of the Doe Defendants that their defenses will likely vary from each other and thus may invite prejudice because, among other reasons, "evidence may well be completely lost in a courtroom buzzing with more than a hundred others sued for downloading [the Work]." (*E.g.*, ECF No. 14-1, at 2-3). Such defenses, however, will only become apparent after the Doe

severance at this time is therefore narrowly designed to effectuate the efficient management of this case involving multiple unknown parties, while still preserving the parties' substantive rights.

## III. Conclusion

For the foregoing reasons, the motions to quash or sever filed by Defendants John Doe 46, 53, and 105 will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

Defendants are identified and appear officially in the action. Once the issues surrounding Plaintiff's subpoenas to the ISPs are resolved and any individual Defendants are named, served, and answer, the court will connect with the parties as to the most effective way to manage the litigation, which may well include division into groups depending on the nature of defense.